### McMAHAN v. BOARD OF ED. OF OKLAHOMA CITY.

No. 21143. Opinion Filed March 11, 1930.
Rehearing Denied March 18, 1930.

Eugene Jordan, for plaintiff in error.

Hayson & Lukenbill and W. C. Lukenbill,

for defendant in error.

ANDREWS, J. Plaintiff in error, A. J. McMahan, hereinafter referred to as plaintiff, filed his petition in the district court of Oklahoma county, in which he alleged that he was a resident ad valorem taxpayer in the defendant school district; that he appeared for himself and all others similarly situated; that the defendant school district is a municipal corporation; that it, on January 15, 1930, issued 2,150 negotiable coupon bonds in the amount of $1,000 each, denominated, "The Board of Education of the City of Oklahoma City School Building Bond of 1930"; "that such bonds were issued in strict conformity with the laws of the state of Oklahoma in such cases made and provided, other than it is provided in each and all of said bonds that the interest coupon numbered (1) shall become due and payable on the 15th day of January, 1931, and that interest coupons numbers (2) et seq. shall become due and payable on the 15th day of July and January thereafter ensuing, until the maturity of the last of said bonds in the year 1955"; "that, among other things, said bonds recite 'that due provision has been made for the collection of an annual tax sufficient to pay the interest on this bond as it falls due, and also to constitute a sinking fund for the payment of the principal hereof at maturity'"; that said bonds were approved by the Attorney General on February 13, 1930; that defendant has threatened to and will sell and deliver the said bonds, unless enjoined; that a tax will be levied for the payment of interest on the bonds and to create a fund to retire the principal thereof; that a tax will thereby be imposed on the property of the plaintiff; that said bonds will be in the hands of innocent purchasers and in their hands will be valid; that the bonds are void for the reason that "bonds may not lawfully be issued nor interest coupons made payable between the dates of July 1st and January 1st in any year," that "by constitutional and statutory provisions, it is required that, at or before the issuance of such bonds, due provision must be made for the levying of a tax sufficient in amount to pay the interest as it falls due, and create a sinking fund for the retirement of the bonds at their maturity"; that "said laws further provided that the excise board is without authority of law to make an appropriation for the payment of interest coupons on bonded indebtedness which mature subsequent to the fiscal year for which the appropriation is made, and as the laws further provide that no fund levied for one

purpose may be lawfully used for any other purpose, then the excise board of Oklahoma county is not authorized to extend upon the tax rolls a levy, assessment, and tax for the fiscal year 1930-31, sufficient in amount to pay the July 15, 1931, interest coupons attached to said bonds, and will likewise be unauthorized to extend upon the tax rolls for the following fiscal years a levy sufficient to pay the subsequently maturing July 15th coupons"; and that by reason thereof the plaintiff is entitled to injunctive relief, for which he prays.

To that petition a general demurrer was filed by the defendant school district. The trial court sustained that demurrer, and the plaintiff declined to plead further, whereupon the trial court rendered judgment dismissing the action at the cost of the plaintiff. From that order and judgment the plaintiff appealed, by transcript, to this court.

The petition in error avers error in sustaining the demurrer to the petition and in rendering judgment for the defendant.

The plaintiff, under the authority of Marlow v. School District, 29 Okla. 304, 116 Pac. 797, is authorized to maintain such an action, and the question before this court is the sufficiency of the petition.

An examination of the petition discloses that it consists almost entirely of conclusions of law. The only facts stated as a basis for plaintiff's complaint is that interest coupons on the bonds mature on January 15th and July 15th. It is admitted that due provision has been made for the collection of an annual tax sufficient to pay the interest on the bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof at maturity, in so far as the same can be done under the law, and the plaintiff concludes that the same cannot be done under the law, for the reasons stated by him.

The issuance of these bonds was assented to by three-fifths of the voters of the defendant school district, voting at an election held for that purpose, under the provisions of section 26, art. 10, of the Constitution and the statutes supplementary thereto. Under those provisions, and as a condition precedent to the incurring of the indebtedness evidenced thereby, the school district is required to provide "for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years

from the time of contracting the same." Section 26, Id., is a limitation (Eaton v. St. L. & S. F. Ry. Co., 122 Okla. 143, 251 Pac. 1032), and goes to the extent of prohibiting the incurring of the debt without making provision for the payment of the interest as it falls due and for the payment of the principal within 25 years from the time of contracting the same. Such payments are to be paid from a fund obtained by the collection of an annual tax for that purpose. The tax must be on a fiscal year basis. Section 1, art. 10, of the Constitution.

School district officers may be authorized, by general laws, to assess and collect taxes (section 20, art. 10, of the Constitution), and it is the duty of such officers, in the manner authorized by general law, to levy "sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay." Section 28, art. 10, of the Constitution. The Legislature has provided by general laws the authority for the school district making such levies.

Those constitutional provisions and statutes must be construed together, and the construction thereof must not be so strict or technical as to defeat the evident purpose and object of their adoption. State ex rel. Edwards v. Miller, Mayor, et al., 21 Okla. 448, 96 Pac. 747. When we examine them together, we find that this school district is authorized thereby to assess and collect taxes; that it may levy sufficient additional revenue to create a sinking fund for the purposes stated; that it must levy sufficient additional revenue to create such a sinking fund at or prior to the time it incurs an indebtedness under the provisions thereof; that that levy must be such as to distribute the tax burden caused by the incurring of the indebtedness, as nearly as possible, over the period the indebtedness is to run, and that the collection thereof must be upon a fiscal year basis.

This record shows that the defendant, school district, was authorized, by its voters, to contract the indebtedness evidenced by the bonds in question. It thereupon became the duty of the officers of the school district to ascertain the annual amount necessary to pay the interest on the bonds as it would fall due and to create a sinking fund for the retirement of the bonds at maturity; to fix the dates of maturity of in-

terest at a time when there would be money in the sinking fund available for the payment thereof at maturity, and to pass such resolutions for the levying of a tax sufficient in amount to pay the same, as would thereafter require the extension of the necessary tax levy upon the tax rolls.

It appears that there could be no tax collected during the fiscal year ending June 30, 1930, and that only the first half of the tax for the fiscal year commencing July 1, 1954, could be collected prior to January 15, 1955. The amount necessary to create a sinking fund for the retirement of the bonds at their maturity could not be distributed over 25 years and collected, and, under the rule announced by this court many times and restated in C. D. Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 Pac. 48, for that reason, may be distributed over a period of 24 years and no tax levy extended for the fiscal year commencing July 1, 1954. One-twenty-fourth of the amount of the principal of the indebtedness must be raised by taxation during each of the fiscal years commencing with July 1, 1930.

It further appears that only half of the amount necessary to pay the interest maturity of January 15, 1955, could be collected during the fiscal year commencing July 1, 1954. The entire amount is necessary. In the Coggeshall Case, supra, we said:

"We therefore state the rule to be that the number of levies authorized and required to produce funds available for the purpose of retiring bonds at maturity is the number of fiscal years intervening between the date of the issue and the date of maturity in which tax levies can be made and the tax collected. This will vary in accordance with the date of the bonds and the date of maturity thereof."

We think that the same reasoning applies to the payment of interest maturities. If the date of the bonds is such as to cause the last interest to mature prior to the time when a tax may be levied and collected in that fiscal year, the amount of that interest maturity may be collected in accordance with the above rule, by dividing the total amount thereof by the number of years in which a tax may be levied and collected, and levying a tax including that portion thereof during each of the said years. In order that the tax burden may be distributed as uniformly as possible, the amount of the interest maturing on January 15, 1955, may be distributed over the 24 fiscal years prior thereto, so that 1/24 of the in-

terest maturing January 15, 1955, may be provided during each of the fiscal years commencing July 1, 1930.

It further appears that the interest from January 15, 1930, to July 1, 1931, must be provided for in the fiscal year commencing July 1, 1930, and thereafter one year's interest during each succeeding fiscal year up to July 1, 1954.

The next thing that the school district officers must determine is when the money will be available in the sinking fund to pay the amounts necessary to be paid. That determination must be made prior to the issuance of the bonds in order that the maturity of the interest coupons may be fixed at a time when the money for the payment thereof will be in the sinking fund.

This school district fixed the maturity of its first interest coupon as of January 15, 1931. The question now before the court is, Can there be a tax levied and the money collected for a sinking fund in an amount sufficient to pay those interest coupons on January 15, 1931?

Had the school district provided for an interest maturity on July 15, 1930, we would be compelled to hold that the bonds, as prepared, are voidable if attacked within the 30-day period of contestability, for the reason that there would be and could be no fund available for the payment of that interest as it fell due. However, we are not considering such a situation, for here the first interest maturity is on January 15, 1931.

When the school district officers prepare their financial estimate for the fiscal year 1930-31, they will include therein an amount equal to 1/24 of the principal of the bonds, an amount equal to 1/24 of the interest on the bonds from July 1, 1954, to January 15, 1955, and an amount equal to the interest on the bonds from January 15, 1930, to July 1, 1931.

The excise board will fix a rate of levy for the school district sinking fund, in the manner provided by law, sufficient to meet the needs of that sinking fund. That rate of levy will be extended upon the tax rolls and the tax will be collected in the regular way. When the tax is collected, it will be disbursed by the county treasurer to the treasurer of the school district and will be credited by him to the sinking fund. He will credit the entire amount to that fund and he will not segregate any portion of it for interest, or principal, and he will disburse that fund, as authorized by section 28, art. 10, supra, first for the payment of interest

coupons as they fall due. Under the tax procedure of this state, the school district treasurer will have ample funds in the sinking fund to care for the interest maturity on January 15, 1931.

To illustrate this we will use a bond issue of $24,000, running for 25 years at 5 per cent. interest, dated January 15, 1930, with the first interest coupons due January 15, 1931. The fiscal needs of the school district for the fiscal year commencing July 1, 1930, will be as follows:

1/24 of the principal _____ $1,000.00
1/24 of the interest from July 1, 1954,
   to Jan. 15, 1955 _____ 27.08
Interest from January 15, 1930, to
   July 1, 1931 _____ 1,750.00
Total needs _____ $2,777.08

On January 15, 1931, one-half of the tax will have been collected and there will have been placed in the sinking fund $1,388.54. The amount of the interest due on that date will be $1,200.

Since ample funds can be made available for the payment of the January 15, 1931, interest coupons as they fall due, the bonds are legal in so far as that maturity is concerned.

The real issue presented by the plaintiff is the interest maturity of July 15, 1931. It is his contention that, because this court, in Coggeshall & Co. v. Smiley, supra, Aaronson v. Smiley, 142 Okla. 29, 285 Pac. 59, and In re Gypsy Oil Co., 141 Okla. 291, 298, 285 Pac. 66, 67, all decided December 10, 1929, held that an excise board is without authority of law to make provisions for the payment of interest on outstanding bonded indebtedness which matures subsequent to the fiscal year for which the appropriation is made, no funds can be available for the payment of the interest maturity on July 15, 1931. That contention is caused by a failure to note the issues presented and determined in those cases. The contention was there made that the "calendar year" rather than the 'fiscal year" governed the levying and collecting of taxes for sinking fund purposes, and that in determining the rate of levy for sinking fund purposes the needs of the municipality for the calendar year should be ascertained. This court held to the contrary; that the "fiscal year" governed, and that there could not be included in the needs for the fiscal year, interest maturing during the next fiscal year. It was further contended therein that it was not necessary to show the balance on hand in the sinking fund and that there might be deducted from the balance on hand an amount sufficient to pay interest maturing during the next fiscal year and the false balance so extended be shown as the true balance. This court held to the contrary; that the actual balance on hand at the end of the fiscal year should be shown, and that there could be no reservation made from the fund for such purpose.

That is the plain intent of our constitutional provisions, and the purpose thereof is to require an equal distribution as nearly as possible of the tax burden over the period of the bond term.

The issue in those cases was the manner of determining the rate of levy necessary for sinking fund purposes. Nothing was said therein as to how the interest needs were to be paid. We did say, however, "If the municipal authorities provide for the maturity of the first interest coupon thereon prior to November 1, 1930, they do so with full knowledge that there will be no fund for the payment of that interest at maturity, and the purchaser of the bond does so with the same knowledge." We have herein pointed out that there will be funds available for the payment at maturity of the first interest coupons in issue in this case.

The issue here is the authority to disburse a sinking fund which has been provided in accordance with the statutory provisions therefor. There is no question involved here as to the making of a tax levy during the fiscal year commencing July 1, 1930, to provide for interest from July 1, 1931, to July 15, 1931. The interest for that 15-day period must be included in the levy for the fiscal year commencing July 1, 1931. The question here is, How will the July 15, 1931, interest coupons be paid? The answer is, they will be paid from the sinking fund, which, at that time, will contain ample funds therefor, as shown by the illustration hereinbefore given.

The contention of plaintiff that the interest maturing July 15, 1931, may be paid only from the proceeds of the tax levy for the fiscal year 1931-32 is without merit. We do not pay interest from tax levies or from the proceeds thereof, but from the sinking fund. As long as there is money in that fund, it may be used for the payment of valid claims against the fund. We do not create a separate sinking fund for each fiscal year. The sinking fund continues from year to year. As we said in the Gypsy Case, supra:

"Where money has been collected and is

on hand at the close of a fiscal year and there is no valid claim against it, it becomes a part of the balance on hand in the fund for which it was collected, and must be carried over into the next fiscal year as a balance in that fund. When so carried over, it is available for use for any purpose for which that fund may be used."

The sinking fund is created for the purposes stated in section 28, art. 10, of the Constitution, and the balance on hand therein on July 1, 1931, will be available for payment of the interest maturity of July 15, 1931. There can be no deduction or reservation from that balance, as was attempted to be done in the Tulsa County Cases, but the balance must be carried forward on July 1, 1931, for the purpose of determining the amount of the needs for that fiscal year. The money itself remains in the fund and may be used for the payment of the interest maturity of July 15, 1931, notwithstanding the fact that there has been no tax collected during the fiscal year commencing July 1, 1931.

Summarized, the rule is as follows: The interest from July 1, 1931, to July 15, 1931, must be included in the levy for the fiscal year commencing July 1, 1931, and may not be included in the levy for the fiscal year commencing July 1, 1930. There may be included in the levy for the fiscal year commencing July 1, 1930, the amount of the interest up to July 1, 1931, even though there is no interest coupon due after January 15, 1931, until July 15, 1931. The interest coupon due July 15, 1931, may be paid from any money in the sinking fund on that date.

A similar levy may be made during each year that the bonds run, and ample funds will be available to pay all interest maturities and the principal of the bonds at maturity, if the taxing officials perform their duties. The petition does not allege that the taxing officials intend to violate obligations or to refuse to perform their duties, and in our opinion the same does not state a cause of action.

The cases cited by the plaintiff relate to bond issues where it was impossible for the funds to be available in time to retire the indebtedness, and they are not in point.

The judgment of the trial court is affirmed.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur.