986 P.2d 1130 (1999)
1999 OK 53
STATE of Oklahoma, ex rel. Robert H. MACY, District Attorney for the Seventh Prosecutorial District, Plaintiff/Appellee,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF OKLAHOMA, State of Oklahoma, Defendant/Appellant.
No. 89,496.
Supreme Court of Oklahoma.
June 1, 1999.
Alan E. Synar, Oklahoma City, Oklahoma, for the Appellant.
Robert H. Macy and Robert L. Mitchell, Oklahoma City, Oklahoma, for the Appellee.
*1132 OPALA, J.
¶ 1 The dispositive issues on appeal are: [1] Were the actions taken by the Board of County Commissioners of Oklahoma County [commissioners] effective to change the county's 1996-1997 fiscal-year budget (a) through the June 24, 1996 resolution disapproving a salary supplement for the district attorney (and his assistants) or (b) through the January 21, 1997 resolution that confined claims for the budgeted salary supplement to only the first half of the fiscal year? and [2] Is a county-funded salary supplement for the district attorney  initially authorized by the *1133 terms of 19 O.S.Supp.1996 § 215.30[3] and later implemented before the district attorney's term of office had begun  rendered invalid by Art. 23 § 10, Okl. Const.'s[4] prohibition against an elected official's salary change during the term of office. We answer all these questions in the negative. In sum, the invoked commissioners' actions were ineffective and the cited provision of the constitution does not affect legislatively authorized county salary supplement.

I

THE ANATOMY OF LITIGATION
¶ 2 This is a controversy between Robert Macy, District Attorney of Oklahoma County [DA or Macy], and the county commissioners over the latter's refusal to approve payment of the DA's budgeted salary supplement (for him and his assistants) during the 1996-1997 fiscal year.[5] The budget in contest was prepared and completed in conformity to the provisions of the County Budget Act.[6] That Act authorizes the board of county commissioners to delegate its budget-related functions to a constituted county budget board. Oklahoma County opted for activation of that board. In controversy here is the extent of the power the commissioners retained after delegating to the board their budget-related responsibilities.
¶ 3 The DA submitted to the Oklahoma County Budget Board [budget board] an estimate of office needs for fiscal-year 1996-1997, which included $106,244.46[7] for the DA's (and his assistants') salary supplement. The commissioners voted on 24 June 1996 to deny that supplement.[8] Disregarding this negative resolution, the budget board included in its reported county budget the full amount the DA had requested for the salary supplement. This figure was later *1134 approved by the county excise board.[9] On 21 January 1997 the commissioners receded in part from their earlier resolution by approving the DA's salary request but only for the first six months of the fiscal year.[10]

The Declaratory Judgment Action
¶ 4 The DA pressed at nisi prius for a judicial declaration that (a) because sufficient funds were available for payment, the commissioners were powerless to interfere post factum with the amount that stood appropriated for salary supplement in the budget board's approved county budget and (b) the amount of the supplement (reported by the budget board) became a part of the DA's salary by operation of law and came to be constitutionally frozen for the entire term of his office. The commissioners counterclaimed for the trial court to declare that[11] (a) the power they relinquished by the delegation effected under the provisions of the County Budget Act extended no further than the budget preparation and presentation functions while (b) the authority over budgeting continued to remain under the commissioners' sole management.
¶ 5 The trial court's summary relief to the DA (a) concluded that the commissioners may not deny payment of claims for DA's salary supplement so long as funds are available up to the appropriated amount and (b) declared the included supplement to be free from constitutional restraint.[12] The commissioners brought this appeal.

*1135 II

AUTHORITY OVER THE BUDGET WAS PLACED BEYOND THE REACH OF THE COMMISSIONERS WHEN THE BUDGET BOARD'S FUNCTION PASSED ON TO THE SOLE CONTROL OF THE EXCISE BOARD AND THEN THE PROCESS WAS CARRIED TO FINAL CONCLUSION WITHOUT ANY ANTECEDENT COMMISSIONERS' CHALLENGE TO THE DA SUPPLEMENT'S INCLUSION, EVEN THOUGH THE FINALLY APPROVED BUDGET WAS PLAINLY CONTRARY TO THE COMMISSIONERS' EARLIER VOTE (OF 24 JUNE 1996) AGAINST SALARY SUPPLEMENTS (FOR THE DA AND HIS ASSISTANTS)
¶ 6 This is a controversy over the extent of power the commissioners retained after delegating to the budget board their own budget-related functions. The County Budget Act gives absolutely no textual indication of how much authority over the budget is delegated or retained by the board of county commissioners. We can derive no help from the textual analysis of the Act. The question at hand presents a casus omissus.[13] As we analyze the problem at hand, it is unnecessary for this appeal's disposition that we decide the extent of power the commissioners had retained.
¶ 7 Assuming, as we do solely for argument's sake, that the commissioners had the authority to affect the budget before it became final, the dispositive issue here is what legal effect, if any, the commissioners' June 24, 1996 and January 21, 1997 resolutions had on the critical appropriation[14]that was in fact made for the DA's 1996-1997 salary supplement.[15] Based on this record's contents, we accept the parties' admissions that (a) the budget board  in utter disregard of the June 24 resolution  did in fact include in its budget an appropriation that gave full funding to the DA's office for the entire requested fiscal-year salary supplement,[16] and that (b) the budget passed on to the excise board where it was finally approved without any challenge from the commissioners.[17] When filed with the excise board, the county budget constitutes an appropriation for each of the included items subject only to the excise board's final approval.[18] The excise board's role at this terminal stage of the *1136 process is (a) to examine the budget for conformity to the law[19] and (b) if the budget will pass legal muster, to certify it as approved.[20]

A.

The June 24, 1996 Resolution
¶ 8 The commissioners' June 24 resolution clearly became ineffective[21] when the budget board's process[22] had reached finality by ripening into an appropriation sans challenge from the commissioners. The responsibility to prevent the approved DA salary supplement from becoming final rested on the commissioners. The County Budget Act does not divest them  qua governing body of the county[23]  of standing to challenge the budget board's refusal to act in conformity to their resolution. By allowing the budget to reach the terminal stage and thus to be transformed, without protest, into an appropriation,[24] the commissioners' inaction permitted the budget board's will to prevail. It is the excise board's approval of the appropriation in contest that imparted to the supplement both its efficacy and finality.
¶ 9 The control over the county budget (1) passes ex lege from the budget board to the excise board when the conditions prescribed in 19 O.S.1991 §§ 1408-1413 are met, and (2) as soon as the provisions of 19 O.S.1991 §§ 1414-1416 are fulfilled, the budget is placed beyond the excise board's reach to become an appropriation. That appropriation, which at its final stage passed the excise board's scrutiny, must control over any discordant board of commissioners' resolutions which either preceded or followed the de jure budget's birth. For a detailed explanation of these critical stages, the reader is referred to the descriptive material in footnotes 22 and 24.

B.

The January 21, 1997 Resolution
¶ 10 The commissioners' January 21, 1997 resolution is as ineffective as that of 24 June 1996. It came too late to affect the *1137 completed budget process, which by then stood transmuted by operation of law from a de facto into de jure appropriation. Whatever residue of budget authority the commissioners may claim to have retained under the County Budget Act, their exercise of that power, when interposed too late, cannot effectively interfere with a completed budget process. To allow that process to be undone by an act of the commissioners, taken after the terminal stage, would subject to utter chaos the entire fiscal function of the county. We will not assume that the county's decision to come under the budget act was ever intended to transform an otherwise stable and orderly process into a series of chaotic stages that lack orderly framework. In short, when as here, the budget is allowed to arrive at that terminal point at which it ripens  ex lege and sans challenge  into an effective appropriation, it is to be treated as having passed beyond the reach of the commissioners' authority.

C.

The Solution Tendered By The Author Of A Statement In Disagreement With The Analysis Offered By The Court's Opinion Would Subject The County Budgetary System To A Serious Constitutional Attack
¶ 11 The concurring-in-judgment statement would exclude the commissioners from standing as protestants before the excise board. That view is not only utterly inconsistent with the 19 O.S.1991 § 1415's plain textual analysis, but would offend against the Art. 5 § 46, Okl. Const., uniformity-of-procedure mandate by injecting havoc into the orderly budget process.[25]

No Indicia Are Present of Legislative Intent to Discriminate Between Protesters Who Are Equally Affected By A Budget's Illegality
¶ 12 An excise board budget protest generally is limited to the presence of "any alleged illegality" in the county budget.[26] Within the meaning of § 1415, the word "taxpayer" includes any governmental entity that has a patent interest in the county budget. If we failed to consider the commissioners as taxpayers with standing to protest, a large class of persons directly affected by the budget would be excluded from standing to challenge it. That result would clearly be contrary to the legislative intent. The legislature is not presumed to discriminate among persons equally affected by an event or transaction.[27] Neither can this court deprive of standing anyone who has a patent interest in the county budget. The county commissioners would have standing to challenge an illegality in the budget as Hohfeldian *1138 plaintiffs[28]  persons with a legally cognizable interest at stake. Moreover, the term "taxpayer" is undefined in the County Budget Act.[29] We cannot hence read into § 1415's text the intent to exclude a class  not explicitly singled out for that treatment  which is affected by the illegality in a like manner as those persons who pay taxes.
¶ 13 Today's pronouncement does not collide with the notion that only a taxpayer can complain against an ad valorem assessment.[30] A § 1415 protest before the excise board against illegality is not an attack on an assessment, but rather on the legal correctness of the budget (or of one of its items). Like any other participant in the county budget process, the commissioners, though budget beneficiaries, have standing to assail any facial legal flaws. Unavailable to "tax consumers" are only protests against tax assessments.[31]

State Fundamental Law
¶ 14 Art. 5 § 46 mandates in absolute terms statewide procedural uniformity for an entire class of similarly situated persons or things as well as uniformity for regulating affairs of counties.[32] The cited constitutional provision proscribes "special" laws that single out for different treatment less than an entire class of similarly situated persons or entities.[33] Affording disparate procedural remedies for the removal of an illegality from the budget would offend this State's fundamental law. Tax consumers and tax beneficiaries are affected in a like manner by a county budget's illegality. Giving for the very same inquiry one remedy (of a § 1415 protest) to taxpayers only and quite a *1139 different remedy (of mandamus) to tax consumers for the very same inquiry would create a procedural dichotomy that at once destroys the symmetry of Oklahoma's remedial regime and hence offends the § 46 uniformity-of-procedure mandate. For the sake and in the interest of advancing the public policy's protected goal of achieving certainty for the budget's finality, the two classes (taxpayers and tax consumers) cannot be viewed as permissibly discrete.
¶ 15 Tulsa Tribune Co. v. Okl. Horse Racing Com'n[34] teaches that litigants who comprise a class interested in the subject matter must be accorded an identical remedy to vindicate the divergent rights in their interest. There, the legislature created an action for those who would seek a public document's release. The court treated as a single class all those persons with an interest in a public document's release as well as in the suppression of the release. Those who seek to prevent the budget from becoming final on the grounds of its illegality must all be treated alike as an indivisible class. While the commissioners qua consumers may have goals divergent from taxpayers, they must be accorded an equally effective remedy. In short, the excise board's authority to correct the final budget by revision must also be invocable by the commissioners in order to prevent the extended presence of that illegality which could have been removed by a taxpayer's protest.
¶ 16 When a statute  as § 1415 in this case  may be susceptible of more than one meaning, the court's duty is to give its text that construction which would save the legislation from facial absurdity[35] as well as make it impervious to constitutional attack.[36] This is the meaning we place on it today.

III

THE PROSCRIPTION IN ART. 23 § 10, OKL. CONST., DOES NOT IMPACT THE STATUTE AUTHORIZING SUPPLEMENTATION OF THE DA's SALARY
¶ 17 The DA urges that commissioners' act of refusal to approve payment of the budgeted salary supplement for the remainder of the fiscal year constitutes an unconstitutional attempt to alter the salary of an elected official during his term of office. We reject the tendered notion as contrary to law.[37]
The pertinent terms of Art. 23 § 10, Okl. Const., are:
"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; * * *"
(emphasis supplied).
The "unless" phrase in Art. 23 § 10 permits that change to occur in a public official's salary during his term of office which results from the operation of a statute enacted before that official's election.[38] The salary of an officer may hence be increased (or decreased) after one's election (or during *1140 one's term of office) if the law that operates to effect that salary change was enacted before that officer's election.
¶ 18 The statute authorizing the county to supplement the DA's state salary (19 O.S.Supp.1996 § 215.30(C)(1))[39] was enacted in 1990.[40] It clearly contemplates salary supplement that is subject to change by the fiscal-year budgetary process. The statute's terms provide that the county "may" supplement the DA's salary based on the statutory formula. Macy's term of office (that is pertinent to this litigation) began in January 1995.[41] Because the statutory scheme allowing county supplement was enacted well before Macy's term of office had begun,[42] any increase (or decrease) in salary supplement, which is brought about by the county budgetary process, would stand unaffected by the restrictions imposed by Art. 23 § 10.

IV

SUMMARY
¶ 19 Macy's salary supplement for fiscal year 1996-1997 was effectively converted to an efficacious appropriation. Assuming that the commissioners do have the power to prevent a supplement's inclusion in the budget,[43] they did not effectively impress their will by a timely challenge to the fund's inclusion (in the budget board's budget) before the excise board had finalized the process and let it ripen into an appropriation. The commissioners' January 21, 1997 resolution that restricts the salary supplement to a six-month period is inefficacious. It took place after the excise board had finalized the budget board's fiscal-year program and thus transformed its content into a de jure appropriation of funds. The county appropriation, which at its final stage withstood the excise board's scrutiny, must control over any discordant board of commissioners' resolutions that either preceded or followed the de jure budget's birth.
¶ 20 Because the statute that allows a county to supplement the DA's state-paid salary was enacted before Macy's term of office had begun, the supplement may be increased (or decreased) by the county budgetary process without offending Art. 23 § 10 of the state fundamental law.
¶ 21 The trial court's summary judgment is accordingly affirmed.
¶ 22 HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS, ALMA WILSON and KAUGER, JJ., concur;
¶ 23 SUMMERS, C.J., concurs in judgment but not in the court's opinion;
¶ 24 WATT, J., concurs in part and dissents in part.
SUMMERS, C.J., Concurring in Judgment but not in court's opinion.
¶ 1 I concur in the judgment and in most of the Court's opinion. Where I depart is *1141 from that language explaining why "The June 24, 1996 Resolution" became ineffective. The opinion seems to contemplate as available to the Commissioners some kind of "protest" before the Excise Board. I have difficulty reconciling this language with our prior opinions and the relevant statutes.
¶ 2 The budget process of the "County Budget Act" creates a budget for a county. The procedure of § 1415 is for the purpose of taxpayer protesting a county budget. The specific statute at issue, 19 O.S.1991 § 1415, states as follows:
Within fifteen (15) days after the filing of any county budget with the State Auditor and Inspector, any taxpayer may file protests against any alleged illegality of the budget in the manner provided by Sections 24104 through 24111 of Title 68 of the Oklahoma Statutes. If no protest is filed by any taxpayer within the fifteen-day period, the budget and any appropriation thereof shall be deemed legal and final until amended by the county budget board. Taxpayers shall have the right at all reasonable times to examine the budget on file with the county clerk, county excise board or the State Auditor and Inspector for the purpose of checking for illegalities in the levies or for filing protests in accordance with this section.
Section 1415 gives a remedy to taxpayers to file protests against levies, and the statute refers to the procedure in sections 24104 through 24111 of Title 68. Sections 24104 through 24111 are numbered this way in the 1981 Official Statutes, and they specified the procedures for the Court of Tax Review.[1] The incorporation of these statutes and review by the Court of Tax Review is also provided for municipal budgets in 11 O.S. 1991 § 17-210, and medical service districts in 19 O.S.1991 § 1716. The protest is before the Court of Tax Review and not the Excise Board.
¶ 3 The opinion appears to expand the definition of a "taxpayer" to include a governmental entity, in this case, Oklahoma County. This runs counter to many of our opinions that allow mandamus and injunctive relief as the appropriate remedies to government entities in circumstances that include seeking to correct a budget. These remedies are based upon this Court's recognition that governmental entities are not taxpayers, and cannot therefore file the statutory protests. This point is demonstrated by opinions such as Clay v. Independent School District No. 1 of Tulsa County, 1997 OK 13, ¶¶ 22-23, 935 P.2d 294; Oklahoma City v. Excise Board of Okla. County, 193 Okla. 189, 141 P.2d 805 (1943); and Smith v. Board of County Commissioners, 201 Okla. 652, 208 P.2d 177 (1949).[2] If a budget does not include a mandatory expense, as in Clay, then under the reasoning of today's opinion, could a government entity (in that case, the assessor) file a protest as a taxpayer? In one opinion we said the following.
A municipality is a revenue consumer, not a contributor. It does not have standing to press a taxpayer's complaint based on a statute's non-uniform effect
Board of County Com'rs of Muskogee County v. City of Muskogee, 1991 OK 115, ¶ 20, 820 P.2d 797, 807, emphasis added.
The above language is inconsistent with the Court's opinion.
¶ 4 Section 46 of Article 5 states that the Legislature shall not pass any local or special law authorizing certain activities that are listed *1142 in that section.[3] The Court cites two of these as justification for treating a county government as a taxpayer: The first is that the Legislature shall not pass a local or special law authorizing regulating the affairs of counties. The second is that § 46 prohibits a local or special law authorizing "[r]egulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, . . . or other tribunals,. . . ."
¶ 5 The first question raised in a § 46 challenge is whether § 1415 is a special or local law. If it is not, then we need not make further inquiry. See Fraternal Order of Police v. City of Choctaw, 1996 OK 78, 933 P.2d 261, where we said that we must first determine whether the statute at issue in a special law or a general law, and then if so, whether it falls within one of the enumerated situations in which a special law is never constitutional. Id. 1996 OK 78, at ¶ 28, 933 P.2d at 269, citing, Reynolds v. Porter, 1988 OK 88, 760 P.2d 816, 822. Accord, Ross v. Peters, 1993 OK 8, ¶ 27, 846 P.2d 1107, 1119. A statute is general if it relates uniformly to or involves all persons or things in a given class. A statute is special if it relates to only particular persons or things within a class. Fraternal Order of Police v. City of Choctaw, 1996 OK 78, 933 P.2d 261, citing, Reynolds v. Porter, 1988 OK 88, 760 P.2d 816, 822, and Jack v. State, 183 Okla. 375, 82 P.2d 1033 (1938). More specifically: "Special laws prohibited by the Okla. Const. art. 5, § 46 are those which do not have a uniform operation and which apply to less than the whole of a class of persons, entities or things standing upon the same footing or in substantially the same situation or circumstances." City of Bethany v. Public Employees Relations Bd., 1995 OK 99, ¶ 36, 904 P.2d 604, 615, notes omitted. Accord, State v. Goforth, 1989 OK 37, ¶ 10, 772 P.2d 911, 914.
¶ 6 How does the Court determine if the persons, entities or things are indeed standing upon the same footing or in substantially the same situation or circumstances? In making a § 46 analysis we have examined *1143 whether the statute at issue applied to named counties, or excepted named counties from the operation of the statute. See Sparks v. Board of Library Trustees, 197 Okla. 132, 169 P.2d 201, 203 (1946), and the collected opinions involving counties and school districts. One reason for this analysis is that the Legislature possesses the power to regulate counties with a statute applying to all counties. See Sparks v. Board of Library Trustees, 197 Okla. 132, 169 P.2d 201, 203 (1946), where we said that the "Legislature possesses the power to regulate the use of all county funds by appropriate general legislation. . . . ." The statutes at issue here do not single out Oklahoma County from other counties for either inclusion or exclusion. The County Budget Act applies "to any county which by resolution of the governing body elects to come under and comply with all its provisions and requirements." 19 O.S.1991 § 1403.
¶ 7 We have also examined whether the operation of a statute that is universally applicable on its face nevertheless has the effect of singling out particular counties by unreasonable criteria. One example of this is in an opinion involving the local or special laws prescribing the duties of officers in counties. State v. District Court of Mayes County, 1967 OK 228, 440 P.2d 700. There we invalidated legislation that awarded additional salary to certain county officials in those counties with both a population between 20,000 and 20,400 in the preceding decennial census and also possessed an assessed valuation of at least $15,000,000.00. We concluded that "the population and valuation classification prescribed in the bill under consideration is purely arbitrary in the sense that there appear to be no distinctive characteristics upon which varying treatment of officials in the affected counties may be founded, . . . ." Id. 1967 OK 228, at ¶ 11, 440 P.2d at 706. This analysis focuses upon the reasonableness of the criteria used by the Legislature, and not the number of people affected. This is so because the number of persons affected by legislation general on its face, is not, by itself, a sufficient reason for its invalidation. See Excise Board of Washita County v. Lowden, 189 Okla. 286, 116 P.2d 700, 703 (1941), (a law may be general and yet have only one local application); Grable v. Childers, 176 Okla. 360, 56 P.2d 357 (1936), (the syllabus by the Court states that a general law may have an impact upon a relatively small number of persons).
¶ 8 Focusing upon the reasonableness of the legislative criteria is at the heart of the Court's second justification pursuant to § 46 for treating a county government as a taxpayer. Our determination of reasonableness is often based on how the Legislature has defined substantive rights. That is, we have examined whether individuals treated differently by a procedural statute possess the same substantive statutory rights. We do this by looking at the nature of the cause of action or controversy that is involved.
¶ 9 For example, see Walton v. Colonial Penn Ins. Co., 1993 OK 115, 860 P.2d 222, where we noted that suits on oral contracts and written contracts were constitutionally subject to different statutes of limitations, and we held the Legislature could enact statutes of limitations for suits on fire insurance contracts that were different from those for suits on other contracts. Id. 1993 OK 115, at ¶¶ 10-13, 860 P.2d at 225-226. We used this analysis again in Brown v. Ford, 1995 OK 101, ¶ 7, 905 P.2d 223, 228. Therein we said that a statute providing a remedy against an employer for work-related sexual discrimination did not violate § 46 when the remedy was statutorily limited to an employer having fifteen or more employees. Id. In other words, different remedies may be based upon legislatively drawn criteria that distinguish different causes of action. This concept is not novel, and is found in our opinions discussing remedies that are available based upon the nature of the substantive rights at issue. See, e.g., Macy v. Oklahoma City School Dist. No. 89, 1998 OK 58, 961 P.2d 804, 807-810.
¶ 10 In our case today, are different causes of action (or substantive rights) present in a protest remedy for a taxpayer and a mandamus remedy for a county? The answer is yes. This Court has recognized that taxpayers have a direct and immediate pecuniary interest at stake when the illegal use of moneys by a municipal corporation is involved. *1144 Brandon v. Ashworth, 1998 OK 20, ¶¶ 6-8, 955 P.2d 233, 235. From the viewpoint of the Legislature, the interest of county officials, i.e., the county itself, is different from that of taxpayers. This viewpoint is shown by the procedures for a § 1415 protest.
¶ 11 Included in the concept of a protest procedure is the invasion of a legally protected interest where the defendant is that party legally responsible for the injury or its redress. Borrowing and modifying a phrase from Chief Judge Cardozo, the protest procedure of § 1415 is not actionable unless it involves the invasion of a legally protected interest, i.e., the violation of a right with regard to the defendant(s) thereto; proof of an illegal budget item in the air, so to speak, will not do.[4] In other words, a protest proceeding must have as a plaintiff a real party in interest and a proper defendant. Who are the parties to a § 1415 protest of a county budget? A taxpayer or protestant is the plaintiff and a "county" is the defendant. A district attorney is statutorily required to represent a "county" before the Court of Tax Review (68 O.S.1991 § 3026), and either the "protestant" or the "county" may appeal to the Supreme Court, 68 O.S.1991 § 3027. By turning a county into a taxpayer/protestant the Court must also turn some other entity into a county/defendant. I divine nothing in the statutes or the Oklahoma Constitution requiring such a construction.
¶ 12 The Court has stated that: "A classification is not a prohibited, special law if it establishes a reasonable classification of persons, entities or things, sharing the same circumstances." Nelson v. Nelson, 1998 OK 10, n. 24, 954 P.2d 1219, 1225. The Court then cited with approval a separate writing stating "that legislation relating to `discrete subclasses . . . based upon identified distinguishing characteristics' would not be subject to art. 5, § 46's prohibition against a special law." Id. Thus, it is reasonable for the Legislature to classify the interests of county government as different from taxpayers when the complaint is an alleged illegality in a county budget. Are there characteristics that distinguish county government as a party seeking to challenge a budget from taxpayers seeking to challenge a budget? If so, there is no violation of Art. 5 § 46. The statutes themselves characterize the interests of counties and taxpayers as different.
¶ 13 The interests of taxpayers in removing an alleged illegal payment from a budget are simply not the same as those of county government from removing an alleged illegal payment from its own budget. If the illegality is not removed the taxpayer must fund the item. The Legislature recognizes this substantive fiscal interest and gives the taxpayer a remedy at the end of the process after the budget has been approved by the excise board. An excise board is required to strike items that are not authorized or contrary to law. 68 O.S.1991 § 1414(A)(1). Giving taxpayers a remedy to challenge an illegal expenditure after excise board approval gives taxpayers an opportunity for a final approval of the expenditure of public funds. I would follow the literal language of the statutes and decline to make county government a "taxpayer" for the purposes of a tax protest proceeding. I would conclude that § 1415 is not a local or special law.
¶ 14 In sum, if an item in the budget before the Excise Board is unlawful because of the June 24th Commissioners' Resolution, then that same item was unlawfully in the budget before the Budget Board. The Resolution would thus have legal effect as to all government entities  including both the Budget Board and the Excise Board. If no statutory remedy exists for County Commissioners before the Court of Tax Review the common law remedy of mandamus fills the gap. This is one purpose of mandamus, and a procedure consistent with Clay v. Independent School District No. 1 of Tulsa County, supra. This remedy was available at the time this dispute arose. Clay v. Independent School District No. 1 of Tulsa County, supra. *1145 The Commissioners' remedy was to seek mandamus against the Budget Board immediately when it published the budget with the alleged unlawful item, and then subsequently to add the Excise Board as a party respondent in the same proceeding if the alleged unlawful budget is before the Excise Board without correction.
¶ 15 I concur in the judgment because the Commissioners used the wrong remedy. Their claim was pressed by a counter-claim in a declaratory judgment proceeding, and the fiscal year has lapsed, mooting any claim for governmental funds. See Clay v. Independent School District No. 1 of Tulsa County, 1997 OK 13, at n. 22, 935 P.2d at 305, explaining, Morton v. Adair County Excise Board, 1989 OK 174, 780 P.2d 707, and other opinions.[5] Thus, I would affirm the judgment.
NOTES
[3] pertinent terms of 19 O.S.Supp. 1996 § 215.30(C)(1) are:

C. * * * The salaries of the district attorneys and the salaries of the assistant district attorneys and their operating and maintenance expenses in each county shall be paid by the state. Provided however:
1. In counties having a population of five hundred fifty thousand (550,000) or more, the salary of the district attorney and assistant district attorneys may be supplemented by the county. Such supplement for the district attorney shall not exceed twenty-five percent (25%) of the salary provided for district attorneys by this section. Such supplement for the assistant district attorneys shall not exceed twenty-five percent (25%) of the salary authorized for assistant district attorneys in Section 215.34 of Title 19 of the Oklahoma Statutes.
(emphasis supplied).
The quoted text was not changed by the 1997 amendment.

[4] For the pertinent terms of Art. 23 § 10, Okl. Const., see Part III, infra.
[5] This dispute initially came to us by the DA's quest for extraordinary relief through a prerogative writ. Sup.Ct. Cause No. 87,791. Cognizance of that proceeding was assumed and the cause transferred to the district court for disposition of the claims.
[6] 19 O.S.1991 §§ 1401 et seq.
[7] Both the commissioners and the DA admit that $106,244.46 represents the full amount of the funds requested by the DA for supplementation of the salaries. See, e.g., [1] commissioners' Answer to Plaintiff's Amended Petition and Counterclaim, p. 3, First [and Second] Application To Supplement Defendant's Answer and Counterclaim p. 2 ("The District Attorney had originally sought $106,244.46"); [2] DA's Proposed Findings of Fact and Conclusions of Law, p. 5 ("Plaintiff made the request for the supplemental salary appropriation in his estimate of needs for fiscal year 1996/1997 in the amount of $106,244.46"); [3] DA's Proposed Findings of Fact and Conclusions of Law, Exhibit 3 p. 2 (certified copy of 1996-97 budget for DA)("Account 1100 Salaries and Wages: * * * *Supplemental for District Attorney and Assistants, per budget board Resolution $106,244.46"); and [4] DA's Amended Petition p. 3 ("The Oklahoma County budget for fiscal year 1996/1997 included several appropriations for the benefit and operation of the Plaintiff District Attorney's office, specifically including a certain line item for salary supplements for the District Attorney and several of his senior assistants in the amount of $106,244.46").
[8] Although there is in this record no official proof (by certified copy) of the commissioners' June 24, 1996 resolution, the pleadings and summary judgment briefs of both parties admit its existence as a fact. Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. Strelecki v. Oklahoma Tax Com'n, 1993 OK 122, ¶ 16, 872 P.2d 910, 919; Reeves v. Agee, 1989 OK 25, ¶ 24, 769 P.2d 745, 753-754; Womack v. City of Oklahoma City, 1986 OK 14, ¶ 10, 726 P.2d 1178, 1181 n. 8; Timmons v. Royal Globe Ins. Co., 1985 OK 76, ¶ 8, 713 P.2d 589, 592 n. 10.
[9] The amount needed for the DA's salary supplement was included in the budget board's budget and approved by the excise board without the commissioners' protest. See record proof by (1) DA's Proposed Findings of Fact and Conclusions of Law, p. 5 ("The Oklahoma County Budget Board approved the appropriation request for the salary supplement by incorporating said item in the appropriation for Oklahoma County General Government Department Number 2007, Exhibit A, Account 1100 Salaries and Wages, Line Item `Supplement for District Attorney and Assistants, per Budget Board Resolution' in the amount of $106,244.46"); (2) DA's Amended Petition, p. 2 paragraph 9 ("No protests were filed during the statutory time period and the County Budget and all appropriations therein are deemed legal and final"); and (3)commissioners' Answer to Plaintiff's Amended Petition, paragraph 9, p. 2 ("With respect to paragraph 9 of Plaintiff's Amended Petition, Defendant admits the same").
[10] Attached to the commissioners' First Application To Supplement Defendant's Answer and Counterclaim is a copy of the minutes of the commissioners' January 21, 1997 session.
[11] A declaration of rights may be sought under the terms of 12 O.S.1991 § 1651 upon status, some other legal relations, as well as upon governmental regulations regardless of whether other relief also is available. Declaratory relief cannot be withheld merely because another remedy may be invocable. Only an exclusive remedy, one explicitly created for a particular contest to the exclusion of others, will bar resort to a § 1651 suit. See, e.g., Oklahoma Tax Com'n v. Ricks, 1994 OK 115, 885 P.2d 1336, 1342. The broad terms of § 1651 accommodate not only Macy's present claim  that the included budget item is valid  but the commissioners' counterclaim as well. Both parties were clearly entitled to gain district court access for resolution of their controversy by a judicial declaration of rights. Neither party suggests that the chosen remedy was inappropriate.
[12] According to the trial court's conclusions (1) the county budget board approved the DA's appropriation of $106,244.46 for the fiscal year 1996-1997 salary supplement and included that sum in the budget adopted for that year; (2) the commissioners refused to approve payment of those sums accruing since 31 December 1996; (3) the county has the option to supplement from county funds the state salaries of the DA and assistant district attorneys, not to exceed 25% of their respective state salaries provided by law (19 O.S.Supp.1996 § 215.30); (4) the powers of the county as a body politic and corporate are exercised by its board of county commissioners (Art. 17 § 1, Okl. Const., 19 O.S.1991 § 3); (5) any county in the state may by resolution of its governing body elect to come under and comply with the County Budget Act (19 O.S.1991 §§ 1401 et seq.); (6) a budget board, consisting of elected county officials, is created in each county that elects to come under the Act (19 O.S.1991 § 1407); (7) the budget board shall prepare each year a budget for each fund whose activities require funding through appropriation from county funds (19 O.S.1991 § 1408); (8) except as provided otherwise in the Act, the Act's provisions take precedence over other state laws applicable to county budgets and supersede any conflicting laws (19 O.S.1991 § 1403); (9) at all times material to this case, Oklahoma County had in place a duly constituted and acting budget board; (10) the budget board had timely and correctly approved the appropriation for salary supplement to the DA (and his assistants) for fiscal year 1996-1997, which appropriation was included in the adopted budget for that year; (11) an adopted budget is in effect on and after the first day of the fiscal year to which it applies and an appropriation thus made shall not be used for any other purpose except as provided by law (19 O.S.1991 § 1413); (12) payment of money correctly appropriated to the DA's office in a correctly adopted budget for salary supplement cannot thereafter be denied by the commissioners when there are sufficient funds available within the appropriated amount; (13) the salary supplement appropriated for the DA by the budget board is a discretionary payment not amounting to a salary or emolument of office (Art 23, § 10, Okl. Const.); (14) there is no substantial controversy as to any material fact in the case and (15) the parties are entitled to judgment as a matter of law.
[13] "Casus omissus" means that for the dispute in contest no statutory provision may be found. "Casus omissus" is defined as "[a] case omitted; an event or contingency for which no provision is made." BLACK'S LAW DICTIONARY 198 (5th ed.1979). See also Hans W. Baade, The Casus Omissus: A Pre-History of Statutory Analogy, 20 SYRACUSE J. INT'L L. & COM. 45, 46 (1994) (casus omissus is an event or contingency that "lay outside of the (actual) contemplation of the legislature"). Casus omissus, a Roman-law term, is a gap in a contract or in a statute (id.), whereas a lacuna is a gap in the common law.
[14] According to the County Budget Act, 19 O.S.Supp.1993 § 1404(2), the word appropriation "means an authorization and allocation of money to be expended for a given function, activity or particular purpose." The term is also defined by the general statutes governing the county budgetary process, 68 O.S.1991 § 3001, as "synonymous with `estimate made and approved.'"
[15] Because it is unnecessary to decide here whether, to what extent, and in what manner the commissioners could validly exercise authority over the budget before it ripened into an appropriation, we merely assume in this opinion that the commissioners may have certain residual authority but conclude that they did not exercise it in this dispute timely and effectively.
[16] The commissioners and DA admit that the budget board included in the 1996-1997 fiscal-year budget the full amount of the requested appropriation ($106,244.46) for the DA salary supplement. See supra note 7.
[17] See supra note 9.
[18] The appropriation is deemed statutorily effective on the first day of the fiscal year to which it applies. 19 O.S.1991 § 1413(C).
[19] 19 O.S.1991 § 1414.
[20] The secretary of the excise board must certify the approved budget to the county budget board, the county treasurer and the State Auditor and Inspector. 19 O.S.1991 § 1414(C).
[22] The June 24 resolution became functus officio the moment county appropriation passed beyond the excise board's control. Functus officio means that an instrument loses its effect after having fulfilled the purpose of its creation. The resolution's efficacy stood extinguished in a manner similar to that of a condemnation commissioners' report after a timely demand has been made for a jury assessment of landowner's damages. State ex rel. Missouri Hwy. and Transp. Com'n v. Turner, 857 S.W.2d 293, 296 (Mo.App. 1993); Hendrick v. Walters, 1993 OK 162, 865 P.2d 1232, 1235 n. 3 ("Functus officio is a term applied to denote something that once has had life and power, but has become of no effect whatsoever.")(citing Morrow v. Board of Directors of Imperial Irr. Dist., 219 Cal. 246, 26 P.2d 292 (1933)).

In Board of School Trustees of Washington City Administrative Unit v. Benner, 222 N.C. 566, 572, 24 S.E.2d 259, 263 (1943), where the functus officio maxim was applied in a like setting as that in this case, the court stated that "[w]hen the budget is perfected by approval, the power of the various authorities instigating, adopting and approving it is functus officio  it is a task performed  and neither these officials, nor any others in their stead, are clothed with the power of budgetary control, which might be invoked to modify its terms" (emphasis supplied).
[21] The budget board must complete its budget 30 days before the beginning of the "budget year" (the fiscal year for which a budget is being prepared). 19 O.S.1991 § 1410(A). After public hearings on the budget (no later than 15 days before the budget year begins, § 1412), the budget board must adopt a budget at least 7 days before the beginning of the budget year. 19 O.S.1991 § 1413(A). The adopted budget must be filed with the county excise board on or before the first day of the budget year. 19 O.S.1991 § 1413(B). The adopted and filed budget constitutes an appropriation for each fund subject only to final approval by the excise board. 19 O.S. 1991 § 1413(C).
[23] 19 O.S.Supp.1993 § 1404(16).
[24] After the adopted budget passes to the excise board (see explanation in footnote 22 supra), that body (1) reviews it for conformity to the law, 19 O.S.1991 § 1414; (2) certifies the approved budget, 19 O.S.1991 § 1414(C); (3) files the adopted and approved budget in the office of the county clerk, of the excise board and of the State Auditor and Inspector 19 O.S.1991 § 1414(C); and (4) if no taxpayer protest is filed within 15 days after filing of the county budget with the State Auditor, the budget is deemed "legal and final." 19 O.S.1991 § 1415 (see infra note 26 for the statute's text).
[25] The pertinent terms of Art. 5 § 46, Okl. Const., are:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
* * * * * *
Regulating the affairs of counties . . .;
Regulating the practice or jurisdiction of . . . in judicial proceedings or inquiry before the courts. . . or other tribunals . . . .;"
(emphasis supplied).
[26] The terms of 19 O.S.1991 § 1415 are:

Within fifteen (15) days after the filing of any county budget with the State Auditor and Inspector, any taxpayer may file protests against any alleged illegality of the budget in the manner provided by Sections 24104 through 24111 of Title 68 of the Oklahoma Statutes. If no protest is filed by any taxpayer within the fifteen-day period, the budget and any appropriation thereof shall be deemed legal and final until amended by the county budget board. Taxpayers shall have the right at all reasonable times to examine the budget on file with the county clerk, county excise board or the State Auditor and Inspector for the purpose of checking for illegalities in the levies made or for filing protests in accordance with this section.
(emphasis supplied).
[27] Childs v. State ex rel. Oklahoma State University, 1993 OK 18, 848 P.2d 571, 576; St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, 782 P.2d 915, 923; City of Duncan v. Bingham, 1964 OK 165, 394 P.2d 456, 462. Construction that would lead to an absurdity or to discriminatory treatment will be avoided if this can be done without violating legislative intent. Strelecki v. Oklahoma Tax Com'n, 1993 OK 122, 872 P.2d 910, 920; Ledbetter v. Alcoholic Bev. Laws Enforcement, 1988 OK 117, 764 P.2d 172, 179; LeFlore v. Reflections of Tulsa, Inc., 1985 OK 72, 708 P.2d 1068, 1075; Johnson v. Johnson, 1983 OK 117, 674 P.2d 539, 542; Farris v. Cannon, 1982 OK 88, 649 P.2d 529, 531 n. 4; Texas Cty. Irrigation v. Cities Serv. Oil Co., 1977 OK 176, 570 P.2d 49, 51.
[28] A Hohfeldian plaintiff is a legal entity seeking a judicial determination that it has "a right, a privilege, an immunity or a power" vis-a-vis the opposite party in litigation. Toxic Waste Impact Group, Inc. v. Leavitt, 1994 OK 148, 890 P.2d 906, 914 (Opala, J., concurring); Fowler v. Bailey, 1992 OK 160, 844 P.2d 141, 150 (Opala, C.J., concurring); Jaffe, The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff, 116 U.Pa.L.Rev. 1033 (1968).
[29] Section 1404 of the County Budget Act, 19 O.S.1991 §§ 1401 et seq., defines the various terms used in the Act. The term "taxpayer" is undefined.
[30] The concurring-in-judgment statement relies on Board of County Com'rs of Muskogee County v. City of Muskogee, 1991 OK 115, ¶ 20, 820 P.2d 797, 807 (overruled by Clay v. Independent School Dist. No. 1 of Tulsa County, 1997 OK 13, 935 P.2d 294, 306-307) for the notion that a municipality qua revenue consumer, does not have standing to press a taxpayer protest against an ad valorem assessment. The distinction between tax consumer and taxpayer in Muskogee was made in a different context (ad valorem tax protest) and used in an opinion that is now overruled.
[31] In order to harpoon today's pronouncement, the author of the concurring-in-judgment statement resurrects an opinion (Muskogee, supra note 30) overruled by his own pen (Clay, supra note 30). His solution would subject the county budget system to a serious constitutional attack.
[32] The terms of Art. 5 § 46, Okl. Const., supra note 25, prohibit the passage of local or special laws regulating matters enumerated in that section. Among subjects listed in that section are judicial proceedings or inquiry before the courts, commissioners or other tribunals as well as the affairs of counties. Reynolds v. Porter, 1988 OK 88, 760 P.2d 816, 822; Maule v. Independent School Dist. No. 9, 1985 OK 110, 714 P.2d 198, 203-204. When probing for constitutional orthodoxy in procedure, we use a two-prong test: (1) Is the enactment dealing with a subject enumerated in § 46? and if so, (2) Is the legislative classification impermissibly disuniform for that subject matter? The standard for testing remedial laws for § 46 conformity is the legal symmetry of the examined act's categories. The critical question for inquiry is whether the provision of adjective law to be tested fits into the structured regime of established procedure as part of a symmetrical whole. If an enactment injects remedial asymmetry, the § 46 interdiction of special law has been offended. See, e.g., Johnson v. Tony's Town Mister Quik, 1996 OK 138, 915 P.2d 355, 357.
[33] Reynolds, supra note 32 at 822; Maule, supra note 32 at 203-204. Conformity to Art. 5 § 59, Okl. Const., presents a question entirely unrelated to meeting the § 46 procedural orthodoxy. The former section mandates the law's uniform application by the legislative use of general laws, while the latter prohibits the passage of any special or local law on a variety of textually identified subjects. Unlike acts that are challenged as violative of § 46's uniformity-of-procedure mandate, those attacked for infirmity under § 59 are tested by the reasonable-classification standards  a yardstick that may not be employed to probe for the § 46 constitutional orthodoxy. Reynolds, supra note 32 at 821-24. In sum, §§ 46 and 59 call for testing of statutory validity by utterly different gauges. See, e.g., Johnson, supra note 32 at 357.
[34] 1986 OK 24, 735 P.2d 548, 554-555.
[35] Jackson v. Mercy Health Center, Inc., 1993 OK 155, 864 P.2d 839, 844; TXO Production v. Oklahoma Corp. Com'n, 1992 OK 39, 829 P.2d 964, 969; City of Norman v. Liddell, 1979 OK 91, 596 P.2d 879, 882.
[36] Earl v. Tulsa County Dist. Court, 1979 OK 157, 606 P.2d 545, 548; Wilson v. Foster, 1979 OK 45, 595 P.2d 1329, 1333; Neumann v. Tax Commission, 1979 OK 64, 596 P.2d 530, 532.
[37] Although the county supplement's impact on the limitations in Art. 23 § 10, Okl. Const., is here an issue mooted by today's opinion that gives Macy the full relief he seeks, we nonetheless reach it for resolution because it constitutes an important question of public law that is likely to recur. For caselaw teaching that mootness is no bar under the circumstances present here, see Lawrence v. Cleveland County Home Loan Auth., 1981 OK 28, 626 P.2d 314, 315-316; In re D.B.W., 1980 OK 125, 616 P.2d 1149, 1151; Payne v. Jones, 193 Okl. 609, 146 P.2d 113, 116-117 (1944).
[38] State of Oklahoma ex rel. Edmondson v. Oklahoma Corporation Commission, 1998 OK 118 ¶ 12, 971 P.2d 868, 872; Barton v. Derryberry, 1972 OK 116, 500 P.2d 281, 282; Phelps v. Childers, 184 Okl. 421, 89 P.2d 782, 787 (1939); Board of Comm'rs of Delaware County v. Williams, 38 Okl. 738, 135 P. 420, 421 (1913).
[39] For the pertinent terms of 19 O.S.Supp.1996 § 215.30(C)(1), see supra note 3.
[40] Okl.Sess.L.1990, Ch. 264 § 28, eff. 1 July 1990.
[41] The terms of 19 O.S.1991 § 215.20 provide:

At the primaries and general elections held in 1966, and each four (4) years thereafter, there shall be nominated and elected in each and every District Attorney's district in the State of Oklahoma, a District Attorney, who shall hold office for a term of four (4) years, beginning on the first Monday of January following his election, and until his successor is elected and qualified.
[42] Macy was re-elected to office effective January 1995. This term included the critical fiscal year period (1996-1997) in dispute here.
[43] Contrary to courthouse folklore, an appealed nisi prius decision's affirmance does not depend either on the reasons ascribed to it below or on the theories advanced by the parties. A correct trial court's judgment will be affirmed on any theory that is not inconsistent with the record. Bivins v. State ex rel. Oklahoma Memorial Hosp., 1996 OK 5, n. 40, 917 P.2d 456, 465, n. 40; Matter of Estate of Maheras, 1995 OK 40, ¶ 7, 897 P.2d 268, 272 n. 6; Wright v. Grove Sun Newspaper Co., Inc., 1994 OK 37, ¶ 18, 873 P.2d 983, 992; Messenger v. Messenger, 1992 OK 27, n. 52, 827 P.2d 865, 874, n. 52; Willis v. Nowata Land and Cattle Co., 1989 OK 169, ¶ 13, 789 P.2d 1282, 1286-1287; Davidson v. Gregory, 1989 OK 87, n. 23, 780 P.2d 679, 685 n. 23; Benham v. Keller, 1983 OK 68, ¶ 5, 673 P.2d 152, 154; Utica Nat'l Bank and Trust v. Associated Producers, Co., 1980 OK 172, ¶ 20, 622 P.2d 1061, 1066; Thompson v. Inman, 1971 OK 32, ¶ 38, 482 P.2d 927, 937.
[1] For the current codification of these statutes, as amended, see as follows: § 24104 (68 O.S.Supp.1998 § 3024); § 24105 (68 O.S.1991 § 3025); § 24106 (68 O.S.1991 § 3026); § 24107 (68 O.S.1991 § 3027); § 24108 (68 O.S. 1991 § 3028); § 24109 (68 O.S.1991 § 3029); § 24110 (68 O.S.1991 § 3030); and § 24111 (68 O.S.1991 § 3031).
[2] In Clay this Court explained how mandamus is used by government entities to compel an Excise Board to approve a legally proper budget. In Oklahoma City this Court determined that the County possessed a judicially cognizable interest to be litigated in the context of mandamus, and the County could therefore intervene in such a proceeding brought by Oklahoma City to compel the Excise Board to allocate certain ad valorem taxes. In Smith the County Assessor brought an action against the Commissioners and Excise Board to compel a supplemental appropriation for the office of the Assessor, and this Court issued the writ. Smith serves as a further example of how a governmental entity challenges the actions of the excise board by an extraordinary remedy.
[3] Okla. Const. Art. 5 § 46:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
The creation, extension, or impairing of liens;
Regulating the affairs of counties, cities, towns, wards, or school districts;
Changing the names of persons or places;
Authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys;
Relating to ferries or bridges, or incorporating ferry or bridge companies, except for the erection of bridges crossing streams which form boundaries between this and any other state;
Vacating roads, town plats, streets, or alleys;
Relating to cemeteries, graveyards, or public grounds not owned by the State;
Authorizing the adoption or legitimation of children;
Locating or changing county seats;
Incorporating cities, towns, or villages, or changing their charters;
For the opening and conducting of elections, or fixing or changing the places of voting;
Granting divorces;
Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;
Changing the law of descent or succession;
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;
Regulating the fees, or extending the powers and duties of aldermen, justices of the peace, or constables;
Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;
Fixing the rate of interest;
Affecting the estates of minors, or persons under disability;
Remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;
Exempting property from taxation;
Declaring any named person of age;
Extending the time for the assessment or collection of taxes, or otherwise relieving any assessor or collector of taxes from due performance of his official duties, or his securities from liability;
Giving effect to informal or invalid wills or deeds;
Summoning or impaneling grand or petit juries;
For limitation of civil or criminal actions;
For incorporating railroads or other works of internal improvements;
Providing for change of venue in civil and criminal cases.
[4] Included in the concept of a tort is a wrongful act resulting in an injury caused by the defendant. As explained by Judge Cardozo, "Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. `Proof of negligence in the air, so to speak, will not do.' Palsgraf v. Long Island R. Co., 248 N.Y. 339, 341, 162 N.E. 99 (1928), (opinion per Cardozo, C.J.), quoting, F. Pollock, Torts, 455 (11th ed.1920).
[5] Clay v. Independent School District No. 1 of Tulsa County, supra, was remanded to the District Court for further proceedings because of the parties' reliance upon Board of County Com'rs of Muskogee County v. City of Muskogee, 1991 OK 115, 820 P.2d 797. No such reliance is present here and the judgment should thus be affirmed.